UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JIHUI ZHANG and XIDONG GAO, on behalf
of themselves and others similarly situated,

                Plaintiffs,

        - against -

XYZ LIMOUSINE, INC. d/b/a XYZ Car;
XYZ TWO WAY RADIO TAXI ASSOC.,
INC., d/b/a XYZ Car; XYZ TWO WAY
RADIO SERVICE, INC., d/b/a XYZ CAR;
and MOHAMED MOWAD,

                Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 15-7440 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

Plaintiffs Jihui Zhang and Xidong Gao ("Plaintiffs") bring the instant action on behalf of

themselves and others similarly situated, including Shenglin Liu and Luguang Tan ("Proposed

Party Plaintiffs"), alleging violations of the Fair Labor Standards Act ("FLSA"), the New York

State Labor Law ("NYLL"), the Compilations of Codes, Rules and Regulations of the State of

New York ("NYCRR"), and the New York General Business Law ("New York GBL"). *See* Am.

Compl. [DE 9]. Plaintiffs also assert claims for breach of implied contract and fraudulent filing

of Internal Revenue Service ("IRS") returns under 26 U.S.C. § 7434. *Id.*

Plaintiffs allege that Defendants XYZ Limousine, Inc. d/b/a XYZ Car, XYZ Two Way

Radio Taxi Assoc., Inc. d/b/a XYZ Car, XYZ Two Way Radio Service, Inc. d/b/a XYZ Car, and

Mohamed Mowad (collectively, "Defendants") made unlawful deductions from Plaintiffs' pay in

violation of the FLSA and NYLL; failed to pay Plaintiffs minimum wage, overtime, and spread

of hours pay in violation of the FLSA, NYLL, and NYCRR; and failed to provide Plaintiffs with meal periods in violation of the NYLL.  Plaintiffs further allege that Defendants breached an implied contract for reimbursement of Plaintiffs' vehicle costs and expenses; failed to maintain Plaintiffs' weekly payroll records as required by the NCYRR; and failed to provide Plaintiffs paystubs or time of hire wage notices as required by the NYLL.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, which Judge Seybert referred to this Court for a Report and Recommendation as to whether the motion should be granted.  Having considered the moving papers, the record evidence, and the applicable law, the Court respectfully recommends to Judge Seybert that Defendants' motion for summary judgment be GRANTED.

## II.   BACKGROUND

### A.   Factual Background

The material facts, drawn from the Complaint, the papers submitted with respect to the instant motion, and the parties' Local Civil Rule 56.1 Statements, are undisputed unless otherwise noted.  In considering a motion for summary judgment, the Court construes the facts in the light most favorable to the party opposing the motion.  *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04 CIV. 8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006); *see Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

#### 1.   *XYZ and its Drivers*

Plaintiffs and Proposed Party Plaintiffs formerly worked as drivers for a chauffeured ground transportation service, colloquially known as a "black radio car" service, operated by Defendant XYZ Two Way Radio Service, Inc. ("XYZ"), in the New York metropolitan area from its base in Brooklyn, New York.  Defendants' Rule 56.1(a) Statement of Undisputed

Material Facts ("Defs.' SOMF") ¶ 1.  XYZ is comprised of wholly independent shareholders

who own shares, or "radio rights," entitling the shareholder to drive one black radio car within

XYZ's service.  *Id.* ¶ 3.  An XYZ shareholder can drive her vehicle utilizing her own radio,

contract out or lease her radio rights to a third party driver, or allow her radio to sit dormant.  *Id.*

¶ 4.

Plaintiffs and Proposed Party Plaintiffs are not XYZ shareholders.  *Id.* ¶¶ 5, 7.  To drive

cars within XYZ's service, they obtained "For-Hire" licenses from the New York Taxi and

Limousine Commission ("TLC") and leased radio rights from certain XYZ shareholders.  *Id.*

¶¶ 6, 8, 9.  Plaintiffs and Proposed Party Plaintiffs utilized XYZ radio rights and drove cars

within XYZ's service between September 2013 and July 2014.[1]  *Id.* ¶¶ 9-13.  While driving for

XYZ, Plaintiffs drove five-person vehicles and Proposed Party Plaintiffs drove seven-person

vehicles.  *Id* ¶¶ 14, 18, 24, 28.  Neither Plaintiffs nor Proposed Party Plaintiffs were ever

reimbursed or paid for their vehicle expenses.  *Id.* ¶¶ 33-37.  When Plaintiffs and Proposed Party

Plaintiffs ceased driving for XYZ, they were each paid all amounts owed, in exchange for which

they signed broadly-worded releases generally discharging XYZ from any liability.  *Id*. ¶¶ 38,

39.

There is disagreement between the parties as to whether Plaintiffs were paid minimum

wage while working as XYZ drivers.  Defendants point to evidence in the record showing that

Plaintiff Zhang was paid minimum wage at all relevant times.  *See id.* ¶¶ 40-47.  Although

Plaintiff Gao states that he was paid below minimum wage during one pay period, he has

---

[1]       Plaintiff Zhang used the radio rights of an XYZ shareholder to drive within XYZ's
service from February 10, 2014 through June 20, 2014; Plaintiff Gao did the same from
November 20, 2013 through February 6, 2014; Proposed Party Plaintiff Liu did the same from
November 18, 2013 to July 28, 2014; and Proposed Party Plaintiff Tan did the same from
September 23, 2013 to June 30, 2014.  *Id.* ¶¶ 10-11.

provided no evidence, documentary or otherwise, to support that assertion.  *See id*.  Plaintiffs

maintain that there is an issue of fact as to whether they were paid minimum wage after

accounting for out-of-pocket vehicle expenses.  *See* Pls.' CSMF  ¶¶ 64-6.  Plaintiffs submit, *inter*

*alia*, a declaration signed by Plaintiff Zhang in which he states that he received multiple

paychecks for $0.00 while driving for XYZ.  *See* Declaration of Jihui Zhang ("Zhang Decl.")

[DE 72] ¶ 28.  Attached to Zhang's Declaration are check summaries for two checks made

payable to Zhang in the amount of $0.00, dated June 18, 2014 and July 2, 2014 respectively.

*See* Zhang Decl., Ex. A.  Plaintiffs have provided no explanation for the check summaries or

otherwise described what they detail.  The summaries seem to account for 19% of one

workweek, list various deductions, and include trips made between May 27, 2014 and June 20,

2014.  Notably, the summaries fail to indicate hours worked.  It is undisputed that Plaintiffs did

not serve Defendants with any document requests in this action, nor did Plaintiffs produce any

documents responsive to Defendants document demands.  *See* Defs.' SOMF ¶ 46-47.

## 2.   *XYZ Operations*

XYZ drivers chauffeur customers to different locations within New York City and

surrounding areas according to GPS or customer instructions.   *See* Defs.' SOMF ¶¶ 15, 16, 20,

21.  XYZ drivers wear white shirts and black or dark pants,[2] receive customers through radio

dispatch, and cannot be hailed on the street.  *See* Pls.' CSMF ¶¶ 49, 56, 57.   XYZ fares are flat

[not metered], based on geographical zones, and are publicly available in a Rate Book, which is

accessible at XYZ's official website.  *Id.* ¶¶ 59, 61.  XYZ drivers do not chauffeur customers on

---

[2]      Plaintiffs assert that Defendants required XYZ drivers to wear white shirts and black or
dark pants in order to appear professional.  Plaintiffs' Rule 56.1(b) Counter-Statement of
Undisputed Material Facts ("Pls.' CSMF") ¶ 49.  Defendants maintain that XYZ has no such
requirement and that the dress code was imposed by the TLC.  *See* Def.'s Resp. to Pls.' CMSF ¶
49.  In any event, the parties agree that drivers must adhere to a dress code*.*

fixed or predetermined routes, nor do they shuttle passengers from fixed pick-up and drop-off locations under recurring contracts.  *See* Defs.' SOMF ¶¶ 15-17, 20-22, 27-29, 31-32.

Although Plaintiffs assert — through declarations attached to their opposition papers — that XYZ communicated preferred or predetermined routes to drivers both through radio dispatch and the Rate Book, Plaintiffs admit explicitly in their deposition testimony that Defendants did not require them to drive predetermined or fixed routes and that they primarily relied on GPS or customer instructions.  *See* Deposition Transcript of Zidong Gao ("Gao Dep. Tr."), annexed to Declaration of Thomas G. O'Brien ("O'Brien Decl.") as Ex. 1 at 13:22-14:5, 38:25-39:5; Deposition Transcript of Jihui Zhang ("Zhang Dep. Tr."), annexed to O'Brien Decl. as Ex. 2 at 36:18-25, 37:2-10.  The limited declaration statements on which Plaintiffs rely in asserting that XYZ conveyed route instructions to drivers do not indicate that drivers were required to take pre-determined or recommended routes.  *See* Zhang Decl. ¶ 21.  As such, the parties do not dispute that XYZ drivers do not chauffeur customers on fixed or predetermined routes.

With respect to XYZ's contract business, the parties dispute whether XYZ maintains contracts with third parties, located primarily in Manhattan, for reoccurring transportation.  They also dispute whether business derived from contracts with third parties makes up a significant percentage of XYZ's overall business.  While there is no mention of any such reoccurring transportation contracts in Plaintiffs' and Proposed Party Plaintiffs' deposition testimony, Plaintiffs assert in their declarations that Defendants have contracts for reoccurring transportation with firms, corporations, organizations, and/or other entities — mostly located in Manhattan — and that such contracts constitute a significant percentage of XYZ's overall business.  *See* Pls.' CSMF ¶¶ 68-73.  Plaintiffs further assert that contract orders are referred to

as "voucher orders" and that non-contract individual customers are referred to as "cash orders." *Id.* ¶ 70.

Defendants deny Plaintiffs' allegations regarding the provision of reoccurring contract transportation. *See* Defs.' Response to Pls.' CSMF ¶¶ 68-73. Defendants argue that Plaintiffs (1) lack personal knowledge of any such contracts; (2) fail to establish any foundation that such contracts exist; and (3) base their allegations on hearsay and speculation contained in self-serving declarations attached to their opposition papers. *Id.* Further, Defendants underscore Plaintiffs' and Proposed Party Plaintiffs' deposition testimony to the contrary — that Plaintiffs and Proposed Party Plaintiffs almost always picked up and dropped off customers at different locations and were not required to pick up or drop off customers in any specific zones. *See id*. Defendants also deny Plaintiffs' distinction between contract and cash customers and assert that Plaintiffs fail to lay any foundation to support the purported distinction. *Id. at* ¶ 70.

### B.   Procedural Background

Plaintiffs filed the initial Complaint in this action on January 5, 2016, asserting fourteen causes of action for: violations of the FLSA, NYLL, and NYCRR; breach of implied contract for reimbursement of motor vehicle costs and expenses; fraudulent filing of IRS returns; and violations of the New York GBL. On January 14, 2016, Plaintiffs filed an Amended Complaint as of right which is the operative pleading in this case. *See* Am. Compl. [DE 9]. The Amended Complaint asserts the same fourteen causes of action and alleges additional facts concerning Plaintiffs' breach of implied contract claim. *See id*.

On June 24, 2016 Defendants moved to dismiss the Amended Complaint. *See* Defendants' Motion to Dismiss [DE 23]. Judge Wexler, to whom the case was then assigned, issued a Memorandum and Order granting Defendants' motion to dismiss solely with respect to

Plaintiffs' New York GBL claim, the fourteenth cause of action.  *See* January 26, 2017

Memorandum and Order [DE 29].  On October 2, 2017, Plaintiffs moved for collective action

certification under the FLSA.  *See* Plaintiffs' Motion to Certify FLSA Collective Action [DE 53].

In support of their motion, Plaintiffs filed, *inter alia*, affidavits executed by the Proposed Party

Plaintiffs.  *See* Affidavit in Support of Plaintiffs' Motion to Certify FLSA Collective Action [DE

54].  On November 21, 2017, the Court denied Plaintiffs' motion, without prejudice, finding that

the Court could not certify the action without first determining whether Plaintiffs were in an

employee-employer relationship with Defendants within the meaning of the FLSA.  *See*

November 22, 2017, Civil Conference Minute Order [DE 64].[3]

      Defendants filed a request for a pre-motion conference to Judge Wexler on October 14,

2017 for purposes of moving for summary judgment, which Plaintiffs opposed.  *See* DE 59;

DE 60.  Thereafter, Judge Wexler waived the pre-motion conference requirement and granted

Defendants leave to move for summary judgment.  *See* October 20, 2017 Electronic Order.

Between November 3, 2017 and December 15, 2017, the parties served their respective papers

according to a briefing schedule approved and later extended by Judge Wexler.  *See* October 31,

2017 and December 1, 2017 Electronic Orders.  On December 15, 2017, the parties filed the

fully briefed motion on ECF.  *See* DE 67-74.

---

[3]      The Court observes that both Plaintiffs and Defendants refer to Proposed Party Plaintiffs in their papers on the instant motion, offering arguments concerning their work as XYZ drivers.  The parties cite Proposed Party Plaintiffs' deposition testimony, taken during the course of discovery, as well as an affidavit executed by Proposed Party Plaintiff Tan on November 29, 2017, which Plaintiffs filed with their opposition to the instant motion.  Significantly, the Court has reviewed the docket and observes that Proposed Party Plaintiffs never consented to join the instant action.  As such, they are not parties to this litigation.  Neither is Plaintiffs' motion for collective action certification currently before the Court since the Court denied Plaintiffs' motion on November 21, 2017.  Therefore, the Court cannot consider the Proposed Party Plaintiffs' deposition testimony or Proposed Party Plaintiff Tan's affidavit to the extent they do not relate to *Plaintiffs'* claims.

This case was reassigned to Judge Seybert on April 5, 2018.  *See* April 5, 2018

Reassignment Order.  Judge Seybert referred the instant motion to this Court on September 18,

2018 for a Report and Recommendation as to whether to motion should be granted.  *See*

October 11, 2018 Referral Order.

**III.    STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  The moving party bears the initial

burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America,*

*Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

To determine whether the moving party has satisfied this burden, the Court is required to view

the evidence and all factual inferences arising from that evidence in the light most favorable to

the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir.

2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).  In dispatching this task,

a court need only consider admissible evidence.  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir.

2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Hilaire*, 54 F. Supp. 3d at

251.

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden

shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."

*Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*,

No. 09 Civ. 5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "[T]he nonmovant cannot

rest on allegations in the pleadings and must point to specific evidence in the record to carry its

burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06 Civ. 6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

## IV.   <u>DISCUSSION</u>

### A.   **FLSA Overtime Claim**

While reserving their right to demonstrate at trial that Plaintiffs were at all relevant times independent contractors, Defendants argue that summary judgment is warranted on Plaintiffs' FLSA overtime claim (Count VI) because Plaintiffs were FLSA-exempt taxicab drivers, fitting squarely within the Department of Labor's interpretation of the FLSA taxicab exemption. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem.") at 1, 7-14. Plaintiffs maintain that they were employees of Defendants within the meaning of the FLSA, rather than independent contractors, and argue that there is a genuine issue of material fact as to whether Plaintiffs are exempt as taxicab drivers. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Mem.") at 4-10, 12-19. Plaintiffs highlight several XYZ features that purportedly distinguish

XYZ's transportation service from that of a taxicab service, including: XYZ's contracts with firms for reoccurring transportation; XYZ's fixed routes as listed in its Rate Book and designated routes for reoccurring customers; XYZ's expensive flat fares; and XYZ's rule that drivers cannot be flagged down on the street. Pls.' Mem. at 14-18.

Congress enacted the FLSA in 1938. *See* Fair Labor Standards Act of 1938, 52 Stat, 1060, 29 U.S.C. § 201, *et seq*. Sections 6 and 7 of the FLSA, respectively, require that employers pay covered employees a minimum wage and overtime pay. 29 U.S.C. §§ 206, 207. Section 13(b) exempts certain categories of employees from overtime pay, but not minimum wage. 29 U.S.C. § 213(b). The instant case concerns the "taxicab exemption," codified at 29 U.S.C. § 213(b)(17), which exempts from the overtime pay requirement "any driver employed by an employer engaged in the business of operating taxicabs." 29 U.S.C. § 213(b)(17).

The crux of the disagreement with respect to Plaintiffs' FLSA overtime claim is whether Defendants' black radio car service falls within the "taxicab" exemption under the FLSA. As a threshold matter, the Court notes that traditionally, courts in the Second Circuit have narrowly construed FLSA exemptions against the employers asserting an exemption. *See Munoz-Gonzalez v. D.L.C. Limousine Service, Inc.*, 904 F.3d 208, 216 (citing *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017)). However, in *Munoz-Gonzalez*, the Second Circuit's first occasion to interpret the FLSA taxicab exemption, the Court of Appeals made clear that under existing Supreme Court precedent, courts must give FLSA exemptions "a fair (rather than a 'narrow') interpretation." *Munoz-Gonzalez*, 904 F. 3d at 216 (quoting *Encino Motorcars, LLC v. Navarro* 138 S.Ct. 1134, 1142 (interpreting a different exemption under § 13(b) of the FLSA)). As such, the Court will fairly interpret the FLSA taxicab exemption as it would any other statutory provision.

10

### 1.    *The Taxicab Exemption*

Until *Munoz-Gonzalez*, courts in this Circuit have focused on the Department of Labor's

definition of the "business of operating taxicabs" when applying the FLSA taxicab exemption.

*See e.g. Arena v. Plandome Taxi Inc.*, No. 12-CV-1078, 2014 WL 1427907, at *17 (E.D.N.Y.

Apr. 14, 2014); *Cariani v. D.L.C. Limousine Service, Inc.* 363 F. Supp.2d 637, 641 (S.D.N.Y.

2005).  The Department of Labor Field Operations Handbook provides as follows:

> The taxicab business consists normally of common carrier transportation in small
> motor vehicles of persons and such property as they may carry with them to any
> requested destination in the community. The business operates without fixed routes
> or contracts for recurrent transportation. It serves the miscellaneous and
> predominantly local transportation need of the community. It may include such
> occasional and unscheduled trips to or from transportation terminals as the
> individual passengers may request, and may include stands at the transportation
> terminals as well as at other places where numerous demands for taxicab
> transportation may be expected.

DOL Field Operations Handbook Chap. 24, § 24h01 (1999 ed.).  Significantly, in *Munoz-*

*Gonzalez*, the Second Circuit dispensed with the practice of relying on the Department of

Labor's definition, emphasizing instead the canons of statutory interpretation, according to

which a court begins with the language of the statue and looks no further where the statutory

language is unambiguous and the statutory scheme is coherent and consistent.  *See Munoz-*

*Gonzalez,* 904 F. 3d at 216-17.

In *Munoz-Gonzalez*, former drivers of defendant D.L.C. Limousine Service, Inc. ("DLC")

sued DLC under the FLSA seeking overtime compensation for working more than forty hours

per week.  *Munoz-Gonzalez*, 904 F. 3d at 208.  The crux of the disagreement in the parties'

cross-motions for summary judgment was whether DLC qualified for the taxicab exemption

under the FLSA.  *Id.* at 210.  Applying the Department of Labor's definition of "the business of

operating taxicab," the district court granted summary judgment in favor of DLC, holding that

DLC qualified for the taxicab exemption as an employer engaged in the business of operating
taxicabs.

On appeal, the Second Circuit was tasked with reviewing the district court's decision to
grant summary judgment in favor of DLC. Observing that the FLSA does not define "taxicab,"
the Court consulted a sampling of dictionaries, contemporaneously-enacted statutes, and other
legal sources to give the term its contemporaneous ordinary meaning. *Id.* at 213-14. Based on
its review, the Court found "taxicab" to mean: (1) a chauffeured passenger vehicle; (2) available
for hire by individual members of the general public; (3) that has no fixed scheduled, fixed route,
or fixed termini. *Id.* at 214-17. Satisfied that its definition was consistent with the overall
structure of the FLSA, the Second Circuit applied the three-part definition to determine whether
DLC qualified for the taxicab exemption under the FLSA. *Id.* at 214-17. Although the Court of
Appeals believed its definition was consistent with that of the Department of Labor, the Court
declined to follow the Department of Labor's definition, noting that "to the extent that the word
'taxicab' is ambiguous, the Department of Labor's Handbook lacks the force of law, and is
entitled to deference only to the extent that is has the power to persuade." *Id.* at 217 (citation
omitted).

Ultimately, in view of its own definition of "taxicab," the Court of Appeals concluded
that there was no genuine dispute that DLC's drivers qualified for the taxicab exemption. *Id.* at
216. The Court recognized that DLC's fleet consists of chauffeured passenger vehicles, that
DLC's drivers are available for hire by individual members of the general public, and that DLC's
drivers do not cover fixed routes or adhere to fixed schedules or fixed termini. *Id.* at 216. The
Second Circuit rejected plaintiffs' contention that DLC is not a taxicab company because it has
contracts for recurrent transportation with local business and accounts with various repeat

customers.  *Id.* at 217.  Notwithstanding the Department of Labor Handbook's statement that a taxicab company operates "without . . . contracts for recurrent transportation," the Court of Appeals pointed out that contracts with local businesses have long been common in the taxicab industry and that "[w]hat matters is that DLC's cars were available for hire by individual members of the general public."  *Id.*  The Second Circuit also rejected plaintiffs' contention that DLC is not a taxicab company because dispatchers control driver assignments [drivers cannot be hailed] and dismissed as irrelevant plaintiffs' claim that DLC cannot be a taxicab company because it advertises itself as a luxury car service.  *Id.* at 219.

### 2. *Application*

Here, as in *Munoz-Gonzalez*, there is no genuine issue of fact that XYZ's drivers qualify for the taxicab exemption.  XYZ's fleet consists of chauffeured five-person and seven-person passenger vehicles, available for hire by the general public.  XYZ drivers pick up passengers at different locations and take them wherever they want to go, relying on passenger and GPS instructions.  Likewise, XYZ drivers do not cover fixed routes or adhere to fixed termini or fixed schedules.  As such, XYZ's car service fits squarely within the three-part definition for taxicabs articulated by the Second Circuit in *Munoz-Gonzalez*.  As in *Munoz-Gonzalez*, it is not material to the instant analysis that XYZ drivers receive assignments through radio dispatch and cannot be hailed on the street, or that XYZ considers itself a luxury black car service which charges higher fares than those charged by other taxicab companies.

The fact that XYZ dispatch may or may not communicate preferred routes to XYZ drivers prior to passenger pick-up is not relevant to the instant analysis.  As previously noted, Plaintiffs assert that XYZ conveyed preferred or predetermined routes to drivers both through radio dispatch and the Rate Book.  Plaintiffs therefore argue that XYZ is not a taxicab service.

However, there is no specific evidence in the record showing that Plaintiffs covered fixed routes. Although the parties seem to disagree about whether any preferred routes were ever communicated to XYZ drivers, there is simply no evidence that drivers were required to follow any routes communicated by radio dispatch or otherwise.  Plaintiffs submitted a declaration signed by Plaintiff Zhang in which Zhang attests that "XYZ dispatchers . . . would give . . . specific instructions on which route to take, and/or which Exit to go . . . [and] [m]ost of the time, he follow[ed] the dispatchers' instructions."   Zhang. Decl. ¶21.  This is in direct contrast to Zhang's deposition testimony, in which Zhang stated unequivocally that XYZ did not require him to take a certain route for any particular customer.  *See* Zhang Dep. Tr. 37:2-4.  Courts in this Circuit consistently apply the sham affidavit rule to strike or disregard "factual allegations that might otherwise defeat a motion for summary judgment . . . when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts the plaintiff's own prior deposition testimony."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Since that is precisely the case here, the Court cannot and will not consider those portions of Zhang's Declaration.

In the end, the fact that dispatch might convey routes relating to a particular passenger does not mean XYZ drivers shuttle passengers along fixed routes.  Here, there is no genuine dispute about whether XYZ drivers adhere to fixed routes.  To the contrary, the overwhelming and uncontroverted evidence indicates that XYZ drivers pickup and drop off customers at different locations, based on customer and GPS instructions, taking passengers wherever they want to go.

It is also not material to the instant analysis that XYZ may or may not contract with local businesses for reoccurring transportation.  Before the Second Circuit's decision in *Munoz-*

*Gonzalez*, courts applying the taxicab exemption relied on the Department of Labor's Handbook, which provides that a taxicab company operates "without . . . contracts for recurrent transportation." *See e.g., Kim v. Suk*, No. 12 Civ. 1557, 2014 WL 842646, at *5 (S.D.N.Y. Mar. 4, 2014) (holding that the taxicab exemption did not apply to defendant's transportation service where defendant maintained contracts with repeat customers); *Powell v. Carey Intern*, 490 F. Supp. 2d 1202 (S.D. Fla. 2006) 1202, 1213 (holding that the exemption did not apply because, among other reasons, defendant's limousine service had contracts for recurrent transportation with local corporate clients). In *Munoz-Gonzalez*, however, the Court clarified that a ground transportation services company that has contracts with local businesses for recurrent transportation can still be a taxicab company within the meaning of the FLSA so long as the company is available for hire by members of the general public. *Munoz-Gonzalez,* 904 F. 3d at 217. The Second Circuit further clarified that "a company that receive[s] virtually all its business from recurrent contracts and corporate clients might not be available for hire by individual members of the general public." *Id.*[4] Therefore, so long as a ground transportation company is available for hire by the general public, contracts for recurrent transportation do not render the taxicab exemption inapplicable.

And there is no dispute that XYZ is available for hire by members of the general public. Plaintiffs assert that contract customers constitute a significant percentage of XYZ's overall business, rendering the taxicab exemption inapplicable. *See* Pls.' Mem. at 15-16. Significantly, however, the notion of repeat contract business is altogether absent from the deposition

---

[4]    In *Munoz-Gonzalez*, recurrent transportation contracts constituted five percent of DLC's business. *Munoz-Gonzalez*, 904 F.3d at 217. The Court of Appeals deemed DLC's contract business negligible, finding that it did not prevent DLC from being available for hire by members of the general public. *Id.*

testimony in this case.  Indeed, the only evidence Plaintiffs offer in support of their contention that contract business constitutes a significant proportion of XYZ's overall business is contained in declarations attached to Plaintiffs' opposition to the instant motion.  Notwithstanding the self-serving nature of the declarations — which offer statements about recurrent contract transportation for the first time in this litigation — the evidence contained in those declarations is speculative, based on hearsay, and otherwise inadmissible.  Moreover, Plaintiffs have not provided any evidence that XYZ has contract customers in the first place.

For example, Plaintiff Zhang states in his declaration that XYZ has contracts with corporations or entities and that Zhang personally believes these contracts constitute a significant percentage of XYZ's business because "some of [his] customers, including lawyers, doctors, and other officers, told [him] that their firms . . . have contracts with XYZ."  Zhang Decl. ¶¶ 11-15. Not only does Zhang's statement constitute an opinion, it is based on inadmissible hearsay. Zhang offers no concrete facts or evidence to establish that XYZ has contract customers, especially not contract customers that make up a majority of XYZ's business.  *Id.*  Further, Plaintiff Gao and Proposed Party Plaintiff Tan state in their declarations that they believe contract customers constitute a significant percentage of XYZ's overall business because most of their customers did not pay cash and were repeat passengers.  *See* Pls.' CSMF ¶¶ 71; Gao Decl. ¶ 21; Declaration of Lugang Tan ("Tan Decl.") [DE 73] ¶ 19.  However, Gao and Tan offer no foundation in fact for their beliefs or that non-cash and repeat passengers were even contract customers in the first place.  Neither Gao nor Tan articulates sufficient personal knowledge of XYZ's business to offer non-speculative statements about XYZ's contract business.  Rather, Gao and Tan hypothesize about contract customers and their proportion of XYZ's business, presuming that repeat and non-cash customers are not members of the general public.

16

Significantly, even if the repeat and non-cash customers to whom Gao and Tan refer are members of organizations with which XYZ has contracts for recurrent transportation, there is no dispute that XYZ is available for hire by members of the general public. Consequently, XYZ's contracts for recurrent transportation, if any exist, do not render the taxicab exemption inapplicable. Although the Court finds the statements concerning XYZ's contract business to be based on inadmissible hearsay and lacking in personal knowledge, the Court also notes that these assertions appear to be at odds with Plaintiffs' and Proposed Party Plaintiffs' sworn deposition testimony that they picked up and dropped off customers at different locations and were not required to work within specific zones. To the extent that the declarations submitted with Plaintiffs' opposition contradict Plaintiffs' and Proposed Party Plaintiffs' sworn testimony, the Court disregards them.

For the foregoing reasons, Plaintiffs' job descriptions fit squarely within the Second Circuit's three-part definition of taxicab. Therefore, Plaintiffs are exempt from the FLSA's overtime pay provisions.

### B.    FLSA Minimum Wage and Unlawful Kickbacks Claims

Defendants argue that summary judgment is warranted as a matter of law on Plaintiffs' minimum wage and unlawful kickback claims (Counts I and IV) because Plaintiffs admit they were paid above minimum wage after various deductions. [5] *See* Defs.' Mem. at 15-16. Plaintiffs contend that summary judgment is inappropriate since there is an issue of fact as to whether Plaintiffs were paid minimum wage after accounting for deductions for Plaintiffs' out-of-pocket

---

[5]      Notably, Defendants do not argue that Plaintiffs were not employees within the meaning of the FLSA and therefore not entitled to minimum wage. Rather, Defendants rely on Plaintiffs' sworn statements concerning their rate of pay to argue for summary judgment on Plaintiffs' minimum wage and unlawful kickback claims, while reserving the right to establish that Plaintiffs were independent contractors at trial.

vehicle expenses.  Specifically, Plaintiffs assert that Defendants required Plaintiffs to pay for

their car, car insurance, fuel and other car maintenance — expenses which Plaintiffs allege

constitute deductions affecting Plaintiffs' net minimum wage.  *See* Pls.' Mem. at 19-20.  In

addition, Plaintiffs generally allege that Defendants failed to pay the statutory minimum wage for

some or all of the hours they worked.  *See id*.  Plaintiffs argue that even if the taxicab exemption

applies, which would prevent Plaintiffs from recovering unpaid overtime wages under the FLSA,

Plaintiffs are still entitled to recover unpaid minimum wages from the Defendant employers.

A review of the record shows that Plaintiffs have not presented any admissible evidence

which would create a genuine issue of fact as to Plaintiffs' rates of pay.  Plaintiff Zhang admitted

in a sworn response to an interrogatory concerning his rate of pay, that "[d]uring his employment

with Defendants . . . after various deductions . . . [h]is hourly wage ranged from $8.99 to $23.71

per week" between March and May of 2014.  *See* Defs.' SOMF ¶ 40.  Significantly, despite

being asked for a description and accounting of his claims, Plaintiff Zhang's interrogatory

responses are devoid of any references to a minimum wage claim.  *See* Pl. Zhang Resp. to Defs.'

Interrogs., ¶¶ 6-7.  In an apparent change of course, however, Zhang's Declaration states that

"throughout his employment . . . there were several weeks that [he] received a check of zero

dollar[s] from XYZ even though he worked several hours."  *See* Zhang Decl. ¶ 28.  This

assertion stands in stark contrast to Plaintiff Zhang's sworn responses to Defendants'

interrogatories.  Consequently, for the reasons previously explained, the Court cannot and will

not consider the self-serving statements contained in Zhang's Declaration which contradict his

prior sworn statements that he received minimum wage, after deductions, while working as a

driver for XYZ.

Plaintiff Gao admitted in a sworn response to an interrogatory addressing his rate of pay that he made between $12.54 and $41.01 per hour after various deductions for all but one pay period between November 2013 and February 2014 which was the pay period ending November 27, 2013. *See* Pl. Gao's Resp. to Defs.' Interrogs, ¶ 5. However, upon review of Plaintiff Gao's deposition transcript, it is apparent that Gao cannot identify any evidence that he was paid below minimum wage for the pay period ending on November 27, 2013 and that his assertion is based on conjecture. *See* Gao Dep. Tr. 30:25-31:23, 32:18-21, 33:7-11. According to Plaintiff Gao, he relied *exclusively* on his November 27, 2013 paycheck in calculating his rate of pay and responding to Defendants' interrogatory concerning his rate of pay. *See id*. However, admittedly, Plaintiff Gao's November 27, 2013 paycheck does not indicate the number of hours worked, nor does Gao remember how many hours he worked during that week. *See* Defs.' SOMF ¶¶ 44-45.

Despite Plaintiffs' assertions that they were paid less than minimum wage, Plaintiffs have failed to point out any evidence in the record which creates a genuine issue of fact as to Plaintiffs' rates of pay. Significantly, Plaintiffs never requested any documents from Defendants during discovery, nor did Plaintiffs produce any documents. *See* Defs.' SOMF ¶¶ 46-47. "Generally, an employee-plaintiff under the FLSA has the burden of proving that he performed work for which he was not properly compensated." *Santillan v. Henao*, 822 F. Supp. 2d 284, 293–94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946*), superseded on other grounds* by The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, et seq). However, "employees seldom keep ... records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." *Anderson*, 328 U.S. at 687. "Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is,

generally, to "secur[e] the production of such records" from the employer, who has the duty for their maintenance under section 11(c) of the FLSA." *Santillan*, 822 F. Supp. at 294.

Here, Plaintiffs failed, for whatever reason, to request any documents from Defendants during discovery to support their claims. As such, the only evidence on which Plaintiffs rely in attempting to forestall summary judgment on Plaintiffs' overtime and unlawful kickback claims are statements made in Zhang's declaration — statements which contradict Zhang's sworn interrogatory responses — and Gao's speculation that he was paid less than minimum wage during one pay period. Though Zhang attaches to his Declaration check summaries for checks made payable to Zhang in the amount of $0.00, it is not altogether clear that these summaries detail paychecks for any particular pay period. *See* Zhang Decl., Ex. A. Plaintiffs fail to lay any foundation for the exhibits or otherwise explain what they show. Upon review, the summaries seem to represent pay for 19% of one workweek and detail trips conducted over an arbitrary time period. Moreover, the summaries fail to indicate hours worked.

Ultimately, Plaintiffs have not identified any admissible evidence in the record to support their contention that they were ever paid below minimum wage. To the contrary, the record indicates that Plaintiffs were paid above minimum wage, after various deductions. To the extent Plaintiffs assert otherwise, their assertions are speculative, lack foundation, and are antithetical to sworn statements made during discovery.

## C.     NYLL and NYCRR Claims

Plaintiffs assert various claims under the NYLL, including unlawful deductions (Count II); failure to pay minimum wage (Count V); failure to pay overtime wages (Count VII); failure to provide meal periods (Count IX); failure to provide time of hire wage notices or pay stubs (Counts XI and XII); and failure to keep contemporaneous payroll records (Count X). Plaintiffs

also assert a spread of hours claim under the NYCRR, according to which employees who work more than ten hours a day are owed an extra hour of pay (Count VII).  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

Defendants argue that summary judgment is appropriate on Plaintiffs' New York Labor Law claims because Plaintiffs were exempt taxicab drivers, consistent with the New York State Department of Labor's interpretation of the New York taxicab exemption.  *See* Defs.' Mem. at 9-12.  According to the Defendants, New York's taxicab exemption is substantially similar to the FLSA taxicab exemption and they offer the same arguments asserted in connection with the FLSA exemption.  *Id.* at 9.  Likewise, Plaintiffs offer the same response, arguing that there is a genuine issue of material fact as to whether Plaintiffs are exempt as taxicab drivers.  Pls.' Mem. at 13-17.

Specifically, under the NYLL and NYCRR, taxicab drivers are not considered "employees" to whom state labor law protections apply.  *See* N.Y. Lab. Law § 651(5)(e) (defining an employee to "include[] any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work . . . as a driver engaged in operating a taxicab").  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2 (same).  Therefore, by definition, taxicab drivers are exempt from the provisions of the NYLL and the spread of hours pay requirements of the NYCRR.  N.Y. Lab. Law § 651(5)(e); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2; *see also Arena*, 2014 WL 1427907 at 17 (applying the taxicab exemption under the FLSA, NYLL and NYCRR)  Though the NYLL does not define "driver engaged in operating a taxicab," the New York State Department of Labor defines the term in the NYCRR as follows:

> The term driver engaged in operating a taxicab means an individual employed to drive an automobile equipped to carry no more than seven passengers, which is

21

used in the business of carrying or transporting passengers for hire on a zone or meter fare basis, and the use of which is generally limited to a community's local transportation needs and which is not operated over fixed routes, or between fixed terminals, or under contract.

12 N.Y.C.R.R. § 142-2.14(c)(6).  Generally, courts applying the taxicab exemption under New York law have deferred to the New York State Department of Labor's definition.  *See e.g., Arena*, 2014 WL 1427907 at *17 (applying and analyzing the taxicab exemption under the NYLL and NYCRR and deferring to the New York State Department of Labor's definition of "driver engaged in operating a taxicab"); *see also Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470 (2013) (holding that the New York State Department of Labor's interpretation of the NYLL is entitled to deference).  Moreover, courts have recognized that the taxicab exemption under the NYLL is substantially similar to the Department of Labor's definition of "business of operating taxicabs." *See e.g., Munoz-Gonzalez*, 2017 WL 2973980 at *7 (declining to separately analyze the taxicab exemption under the NYLL where the parties agreed it was substantially similar to the taxicab exemption under the FLSA); *Arena*, 2014 WL 1427907 at *17 (finding plaintiff drivers fell squarely within the FLSA, New York taxicab exemptions).

Though the Second Circuit did not address the taxicab exemption under New York State law in its recent *Munoz-Gonzalez* decision, the three-part definition of "taxicab" articulated in that case is consistent with the New York State Department of Labor's definition for "driver engaged in operating a taxicab."  Indeed, a driver engaged in the business of operating a taxicab within the meaning of the New York State Department of Labor is also a chauffeur, available for hire by individual members of the general public, who has no fixed scheduled, fixed route, or fixed termini.  For the reasons articulated above in connection with the taxicab exemption under the FLSA, which the Court here finds to be substantially similar to the taxicab exemption under

22

New York law, the Court finds that XYZ drivers are exempt as taxicab drivers from the provisions of the NYLL and NYCRR.

It is worth noting that Plaintiffs' claims under NYLL §§162 and 146-1.1 fail for independent reasons. First, Plaintiffs' cause of action under NYLL §162 for failure to provide meal periods (Count IX) cannot survive summary judgment because the statute does not provide a private right of action. *See Browne v. IHOP*, No. 05-CV-2602, 2005 WL 1889799, at *1 (E.D.N.Y. Aug. 9, 2005). Only the Commissioner of Labor may bring a claim to enforce Section 162. *Id.*, 2005 WL 1889799, at *3. Second, Plaintiffs' claim that Defendants failed to maintain payroll records under N.Y.C.R.R. §146-1.19(a) (Count X) fails because the provision explicitly applies to employers in the hospitality industry, which includes hotels and restaurants. *See* 12 N.Y.C.R.R. §146-3.1(a). Since Defendants are decidedly not in the "hospitality" industry, Count X cannot survive.

### D. Breach of Implied Contract Claim

Defendants assert that summary judgment is warranted on Plaintiffs' breach of implied contract claim (Count III) for reimbursement of all motor vehicle costs and expenses, including depreciation, insurance, maintenance, and repairs. According to the Defendants: (1) there is an express contract between the parties which covers deductions but does not provide that Defendants pay any of Plaintiffs' expenses in connection with their vehicle or otherwise; and (2) Plaintiffs admit that Defendants never paid any of Plaintiffs' vehicle expenses such that Defendants did not assent to pay Plaintiffs' expenses and Plaintiffs could not have reasonably expected Defendants to pay their expenses. *See* Pls.' Mem. at 19-20. Significantly, Plaintiffs fail to respond to Defendants' arguments and ignore the fact that Defendants have moved for summary judgment on the breach of implied contract claim.

It is well-settled that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) (collecting cases); *accord Levitt v. J.P. Morgan Sec. Inc.*, 9 F. Supp. 3d 259, 266 (E.D.N.Y. 2014).  Here, Defendants moved for summary judgment on Plaintiffs' breach of implied contract claim, but Plaintiffs have failed to address any of Defendants' arguments regarding this claim.  The Court therefore deems Plaintiffs' breach of implied contract claim abandoned.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Defendant's motion for summary judgment be GRANTED.  The Court notes that Defendants have not moved with respect to Count XIII — Plaintiffs' claim for civil damages for fraudulent filing of IRS returns — and neither party addresses Count XIII in their papers.  The Court further observes that no documents have been produced with respect to this claim.  While it is doubtful that Plaintiffs will be able to prove this claim at trial, the Court defers to the judgment of District Judge Seybert with respect to a disposition of Count XIII.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to**

**Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.

Failure to file objections will result in a waiver of those objections for purposes of appeal.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997),

*cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
      March 15, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge